1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT "BOSTON" WOODARD,         No.  CIV. S-11-1807 LKK JFM P

12            Plaintiff,

13       v.                           **ORDER**

14   JOHN W. HAVILAND, et al.,

15            Defendant.

16

17       Plaintiff, a state prisoner proceeding through counsel, has

18   filed this civil rights action seeking relief under 42 U.S.C.

19   § 1983. The matter was referred to a United States Magistrate

20   Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

21       On February 26, 2013, the magistrate judge filed findings

22   and recommendations herein which were served on all parties and

23   which contained notice to all parties that any objections to the

24   findings and recommendations were to be filed within fourteen

25   days. (ECF No. 44.) Plaintiff has filed objections to the

26   findings and recommendations. (ECF No. 47.)

27       In accordance with the provisions of 28 U.S.C.

28   § 636(b)(1)(C) and Local Rule 304, this court has conducted a *de*

1

*novo* review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be partially supported by the record and by proper analysis, as set forth herein.

**I.   Applicable standard**

Despite plaintiff's objections to the contrary, the court finds that the magistrate judge correctly applied the following standard in deciding plaintiff's First Amendment retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).

Plaintiff contends that the fifth Rhodes element was modified by a later Ninth Circuit decision, Barrett v. Belleque, 544 F.3d 1060 (9th Cir. 2008).[1] In so arguing, plaintiff misconstrues Barrett, which addresses the applicable standard for evaluating prisoners' First Amendment claims when prison officials censor their outgoing mail. After considering the question, the Ninth Circuit held as follows: "[C]ensorship of prisoner mail is justified only if the regulation or practice in

---

[1] Plaintiff himself applied the Rhodes standard in his moving papers. However, at oral argument, plaintiff argued that the less-restrictive Barrett standard should apply, and renewed this argument in his objections. (Transcript 2, 5, 24, ECF No. 42; Objections 5-7.)

1   question furthers an important or substantial governmental
2   interest unrelated to the suppression of expression and the
3   limitation of First Amendment freedoms is no greater than is
4   necessary or essential to the protection of the particular
5   governmental interest involved." Barrett, 544 F.3d at 1062
6   (internal quotations and citation omitted). In other words,
7   Barrett concerns the circumstances under which prison officials
8   may justifiably censor outgoing prisoner mail, while Rhodes
9   concerns the circumstances under which prison officials may take
10  justifiably take adverse action in response to such mail. As
11  plaintiff herein is not arguing that prison officials censored
12  his mail, but that they retaliated against him for sending mail,
13  Rhodes is controlling.

14      Plaintiff's position is also unsupported by precedent, as
15  the Ninth Circuit has applied the Rhodes standard in at least two
16  post-Barrett decisions considering First Amendment retaliation
17  claims in the prison context. See Brodheim v. Cry, 584 F.3d 1262
18  (9th Cir. 2009) (applying Rhodes standard on summary judgment);
19  Watison v. Carter, 668 F.3d 1108 (9th Cir. 2012) (applying Rhodes
20  standard on dismissal for failure to state a claim). While the
21  facts of Barrett are closer to the situation presented here (both
22  Brodheim and Watison involve inmates' exercise of their First
23  Amendment rights to file grievances, while Barrett concerns
24  censorship of an inmate's outgoing mail), this similarity is an
25  insufficient basis for applying Barrett as plaintiff wishes.
26      In sum, the magistrate judge applied the proper standard in
27  making his findings and recommendations regarding plaintiff's
28  retaliation claim.

**II.  Appropriateness of denying partial summary judgment to plaintiff**

In deciding plaintiff's motion, the magistrate judge held — correctly, in this court's view – that writing and mailing an article critical of prison staff, which identified certain staff members by their first initials and last names, was protected activity under the First Amendment. (Findings & Recommendations 14.) In other words, the third element above (that plaintiff engaged in protected conduct) was satisfied.

According to the findings and recommendations, plaintiff's motion for partial summary judgment raised three remaining, interrelated questions: whether plaintiff's writing activity was a "substantial" or "motivating" factor behind defendants' conduct (second element); whether defendants' actions in placing plaintiff in administrative segregation (hereinafter, "Ad-Seg"), retaining him in Ad-Seg, and transferring him to a new facility were "adverse," which includes the question of whether the exercise of his First Amendment rights was chilled or silenced (first and third elements); and whether these actions reasonably advanced legitimate correctional goals (fifth element). (Findings and Recommendations 12-15.)

The magistrate judge resolved these questions as follows:

> Defendants contend that they placed plaintiff in Ad-Seg and transferred him because the article posed a threat to the "safety and security" of the institution. In support of their motion, they present evidence that defendants Ferguson and Bradley were both concerned for their safety and the safety of their families after they read the article. See Ferguson Decl. at ¶ 9; Bradley Decl. at ¶¶ 10-11. Both defendant Ferguson and

4

defendant Bradley averred that contents of the article written about them by plaintiff were false. See Ferguson Decl. at ¶ 7; Bradley Decl. at ¶ 11. In addition, defendant Ferguson averred that "[a]fter reading the article, it was apparent to [Ferguson] that it would be difficult for me and other staff to effectively carry out our duties without being accused of retaliation with each possible contact with Woodard. Woodard's pattern was to label even routine activities of peace officers as retaliation against him for his writings." Ferguson Decl. at ¶ 9. As set forth above, these concerns were communicated to defendants Brown, Arthur, and Haviland. Whether those concerns motivated the actions of defendants Ferguson, Bradley, Brown, Arthur, and/or Haviland, and whether the actions they took served a legitimate correctional goal, are disputed by plaintiff and not susceptible to resolution at summary judgment. (Findings and Recommendations 15.)

The court is skeptical of defendants' position. It is doubtful whether the safety of prison staff would have been reduced in any way if plaintiff had remained in the general population at CSP-Solano, as the article in question was publicly available, regardless of where, and how, plaintiff was incarcerated. It is also doubtful that a fear of "being accused of retaliation with each possible contact with Woodard" justifies removal to Ad-Seg and/or institutional transfer, as inmates have a First Amendment right to file grievances, Brodheim, 584 F.3d at 1269, and California has procedures for addressing inmates' abuse of the grievance system that are far less extreme than administrative segregation or transfer. See, e.g., Cal. Code Regs. tit. 15, § 3084.4 ("Appeal System Abuse").

Nevertheless, defendants cite to the deposition transcript of Associate Warden Brown (a named defendant), who testified that

1  he took the measures in question in part because, "I was

2  concerned with [plaintiff's] safety as I wasn't sure if there was

3  another inmate in the institution who may like these individuals

4  [*i.e.*, the prison staff named in plaintiff's article] and may

5  feel it was – take it upon themselves to something to him in

6  their own defense." (Brown Depo. 94:6-10, ECF No. 25-6.) Brown

7  also testified that when he met with CSP-Solano's Institutional

8  Classification Committee, he expressed a belief "that there was a

9  possibility that either the staff, the inmates or Mr. Woodard

10  himself may be – that their security or safety may be compromised

11  based on things that came out of this article." (Brown Depo.

12  140:2-7.) These statements are sufficient to create a triable

13  issue of material fact as to each of the three questions raised

14  by the magistrate judge: specifically, whether plaintiff was sent

15  to Ad-Seg and transferred to another prison for his own safety.

16  At summary judgment, "the judge does not weigh conflicting

17  evidence with respect to a disputed material fact [or] make

18  credibility determinations with respect to statements made in

19  affidavits . . . or depositions. These determinations are within

20  the province of the factfinder at trial . . . . If direct

21  evidence produced by the moving party conflicts with direct

22  evidence produced by the nonmoving party, the judge must assume

23  the truth of the evidence set forth by the nonmoving party with

24  respect to that fact." <u>T.W. Elec. Serv., Inc.</u>, 809 F.2d at 630-

25  31.

26      Consequently, as defendants have demonstrated a genuine

27  dispute as to their motivations in placing plaintiff in Ad-Seg

28  and then transferring him to another prison, whether these

1   actions were adverse, and whether these actions reasonably

2   advanced a legitimate correctional goal, summary judgment in

3   plaintiff's favor was properly denied.

4

5   **III. Summary judgment in favor of defendants Brooks,
        Blackwell, and Rivas**

6       The magistrate judge recommended that summary judgment be

7   entered in favor of defendants Blackwell, Brooks, and Rivas

8   because of an absence of evidence showing that each individual's

9   role in effecting plaintiff's assignment to Ad-Seg and/or

10  transferring him to CCC-Susanville was motivated by plaintiff's

11  protected First Amendment conduct. (Findings and Recommendations

12  15-16.)

13      Motivation is an element of a retaliation claim under

14  Section 1983: a plaintiff must show that the adverse action

15  occurred "because of" his protected activity. Rhodes, 408 F.3d at

16  567-68. According to the Ninth Circuit, "To prevail on a

17  retaliation claim, a plaintiff must show that his protected

18  conduct was the substantial or motivating factor behind the

19  defendant's conduct. To show the presence of this element on a

20  motion for summary judgment, [plaintiff] need only put forth

21  evidence of retaliatory motive, that, taken in the light most

22  favorable to him, presents a genuine issue of material fact as

23  to . . . [defendant's] intent . . . ." Brodheim, 584 F.3d at 1271

24  (internal quotations and citations omitted).

25          **A. Blackwell**

26      Defendant Blackwell, a correctional lieutenant at CSP-

27  Solano, wrote the Form 114-D order placing plaintiff in Ad-Seg.

28

It provides:

> On July 9, 2009, you, Inmate Woodard, B-
> 88207, are being removed from Facility IV
> General Population pending investigation into
> you [*sic*] publishing information on the
> internet that identifies CSP-Solano staff
> members by name. Therefore, you are being
> removed from Facility IV General Population
> (GP) and placed in Administrative Segregation
> (Ad-Seg). (Decl. Haviland, Attachment 2, ECF
> No. 23-1).

At deposition, Blackwell testified that, on July 9, 2009, he received a phone call from a supervisor who told him to put plaintiff in Ad-Seg. (Blackwell Depo. 29:8-13, ECF No. 25-4.) Blackwell testified that "[i]f a superior tells you to put an inmate in ad seg, you don't question them." (Id. 36:5-6.) He later added, "I would follow the order of the superior because I may not have all the facts." (Id. 37:22-3.) Despite these statements, Blackwell cannot credibly claim that he lacked any authority over whether to order plaintiff to Ad-Seg, as the applicable regulation provides:

> Authority to order an inmate to be placed in
> administrative segregation, before such
> action is considered and ordered by a
> classification hearing, may not be delegated
> below the staff level of correctional
> lieutenant except when a lower level staff
> member is the highest ranking official on
> duty.
>
> (a) The reason for ordering an inmate's
> placement in administrative segregation will
> be clearly documented on a CDC Form 114-D
> (Order and Hearing on Segregated Housing) by
> the official ordering the action at the time
> the action is taken.

Cal. Code Regs. tit. 15, § 3336 (2012). As section 1336 gave

Blackwell the authority to order plaintiff to Ad-Seg, he was not acting in a ministerial capacity when he completed the Form 114-D. In fact, Blackwell conceded that he was "the one with the authority to place [plaintiff] in [Ad-Seg]." (Blackwell Depo. 26:12-13.) Finally, the text of the order makes clear that Blackwell was aware that the Ad-Seg order was due to plaintiff's "publishing information on the internet," *i.e.*, protected activity. When taken in the light most favorable to plaintiff (the non-moving party), these facts, and the cited regulation, are sufficient to create a genuine issue of material fact as to whether the protected First Amendment activity was the substantial or motivating factor for Blackwell to issue the Ad-Seg order.

It is also well-settled that, where inmates engage in activities protected under the First Amendment, "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (quoting Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995)); accord Rhodes, 408 F.3d at 569. In sum, it does not appear that Blackwell can claim qualified immunity for ordering plaintiff to Ad-Seg. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district court [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.")

Accordingly, the court must respectfully disagree with the magistrate judge's finding that "[t]he undisputed evidence shows

1  that complying with that order, rather than plaintiff's protected

2  First Amendment conduct, was the motivating factor for defendant

3  Blackwell's action." (Findings & Recommendations 16.) Summary

4  judgment in Blackwell's favor is denied.

5          **B. Rivas**

6      Under Cal.Code Regs., tit. 15, § 3336, after an inmate is

7  initially placed in Ad-Seg, the relevant Form 114-D order is

8  "submitted to the . . . designated staff for review and possible

9  further action as described in section 3337." Section 3337, in

10 turn, provides that "[o]n the first work day following an

11 inmate's placement in administrative segregation, designated

12 staff at not less than the level of correctional captain will

13 review the order portion of the CDC Form 114-D. If retention in

14 administrative segregation is approved at this review, the

15 following determinations will be made . . . ." Cal. Code Regs.

16 tit. 15, § 3337 (2012).

17     It appears that defendant Rivas, a Correction Counselor II

18 Supervisor at CSP-Solano, was responsible for reviewing

19 plaintiff's placement in Ad-Seg. (Rivas Depo. 14:13-22, ECF

20 No. 33-7.) Under section 1337, Rivas had the authority to decide

21 whether to retain plaintiff in Ad-Seg. This is not a ministerial

22 function.

23     There is no question that, upon review of the Form 114-D

24 order, Rivas would have become aware of plaintiff's protected

25 activity.[2]

26 _____

27 [2] Rivas also testified at deposition that he was aware of
   plaintiff's protected activity, stating, "So we had kind of heard
   that Boston had used proper names. I don't know if there's any
28 truth or validity. […] I just heard that he used proper names."

1  Accordingly, there is a genuine issue of material fact as to

2  whether plaintiff's protected First Amendment activity was the

3  substantial or motivating factor for Rivas to retain him in Ad-

4  Seg. Per the Ninth Circuit precedents discussed above, Rivas

5  cannot assert qualified immunity as a defense to liability for

6  this decision. Accordingly, summary judgment in Rivas's favor is

7  denied.

   **C. Brooks**

8

9  Under California law, "[a]ny inmate transfer from a facility

10 other than a reception center shall require a classification

11 committee action and endorsement by a classification staff

12 representative (CSR)." Cal. Code Regs. tit. 15, § 3379 (2012).

13 Defendant Brooks was the CSR who endorsed plaintiff's

14 transfer from CSP-Solano to CCC-Susanville. (Plaintiff's Response

15 to Defendants' Statement of Undisputed Facts ("PR-DSUF") 1, 7,

16 ECF No. 39.) It is undisputed that Brooks reviewed files to

17 ensure that actions taken by classification committees were in

18 compliance with CDCR policies and regulations, and that she made

19 her decision to endorse plaintiff's transfer based on his file

20 information and the recommendations of the classification

21 committee. (PR-DSUF 5, 9.) The classification committee's

22 recommendation provided: "Based on the nature of the article

23 written and that the fact that it appears to specifically target

24 a staff member at Solano for slander or written retaliation, the

25 recommendation is to transfer [plaintiff] to an alternate

26 facility." (Decl. Haviland, Attachment 3, ECF No. 23-1).

27 Brooks testified that she could decide not to endorse a

28 (Rivas Depo. 31:21-24.)

transfer if the recommendations were not proper. (Brooks Depo. 12:6-8, 19-23, ECF No. 33-5.) The court concludes that she was not performing a ministerial function.

Accordingly, there is a genuine issue of material fact as to whether plaintiff's protected First Amendment activity was the substantial or motivating factor for Brooks to endorse his transfer to CCC-Susanville. Per the Ninth Circuit precedents discussed above, Brooks cannot assert qualified immunity as a defense to liability for this decision. Accordingly, summary judgment in Brooks's favor is denied.

### IV.   Conclusion

Accordingly, it is hereby ordered that:

[1] The findings and recommendations filed February 26, 2013, are ADOPTED in part and REJECTED in part, as set forth above;

[2] Plaintiff's April 27, 2012 motion for partial summary judgment is GRANTED in that it is deemed established that plaintiff's acts of writing the article and mailing it for publication are protected by the First Amendment, and DENIED in all other respects;

[3] Defendants' July 26, 2012 cross-motion for summary judgment is GRANTED in that judgment is entered for defendant Warden Barnes on plaintiff's due process claim, and DENIED in in all other respects;

1

2       [4] Plaintiff is GRANTED leave to amend his complaint to

3       name CDCR Secretary Jeffrey Beard as a defendant; and

4

5       [5] This matter is REFERRED back to Magistrate Judge John F.

6       Moulds for further pretrial proceedings.

7

8       IT IS SO ORDERED.

9       DATED:   September 18, 2013.

10

11

12

13      _____
        LAWRENCE K. KARLTON
14      SENIOR JUDGE
        UNITED STATES DISTRICT COURT
15

16

17

18

19

20

21

22

23

24

25

26

27

28