UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT "BOSTON" WOODARD,<br><br>       Plaintiff,<br><br>   v.<br><br>JOHN W. HAVILAND, et al.,<br><br>       Defendant. | No.  CIV. S-11-1807 LKK JFM P<br><br><br><br>**ORDER** |

    Plaintiff, a state prisoner proceeding through counsel, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

    On February 26, 2013, the magistrate judge filed findings and recommendations herein which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within fourteen days. (ECF No. 44.) Plaintiff has filed objections to the findings and recommendations. (ECF No. 47.)

    In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this court has conducted a *de*

1

*novo* review of this case. Having carefully reviewed the entire file, the court finds the findings and recommendations to be partially supported by the record and by proper analysis, as set forth herein.

## I.   Applicable standard

Despite plaintiff's objections to the contrary, the court finds that the magistrate judge correctly applied the following standard in deciding plaintiff's First Amendment retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).

Plaintiff contends that the fifth Rhodes element was modified by a later Ninth Circuit decision, Barrett v. Belleque, 544 F.3d 1060 (9th Cir. 2008).[1] In so arguing, plaintiff misconstrues Barrett, which addresses the applicable standard for evaluating prisoners' First Amendment claims when prison officials censor their outgoing mail. After considering the question, the Ninth Circuit held as follows: "[C]ensorship of prisoner mail is justified only if the regulation or practice in

---

[1] Plaintiff himself applied the Rhodes standard in his moving papers. However, at oral argument, plaintiff argued that the less-restrictive Barrett standard should apply, and renewed this argument in his objections. (Transcript 2, 5, 24, ECF No. 42; Objections 5-7.)

2

question furthers an important or substantial governmental interest unrelated to the suppression of expression and the limitation of First Amendment freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved." Barrett, 544 F.3d at 1062 (internal quotations and citation omitted). In other words, Barrett concerns the circumstances under which prison officials may justifiably censor outgoing prisoner mail, while Rhodes concerns the circumstances under which prison officials may take justifiably take adverse action in response to such mail. As plaintiff herein is not arguing that prison officials censored his mail, but that they retaliated against him for sending mail, Rhodes is controlling.

Plaintiff's position is also unsupported by precedent, as the Ninth Circuit has applied the Rhodes standard in at least two post-Barrett decisions considering First Amendment retaliation claims in the prison context. See Brodheim v. Cry, 584 F.3d 1262 (9th Cir. 2009) (applying Rhodes standard on summary judgment); Watison v. Carter, 668 F.3d 1108 (9th Cir. 2012) (applying Rhodes standard on dismissal for failure to state a claim). While the facts of Barrett are closer to the situation presented here (both Brodheim and Watison involve inmates' exercise of their First Amendment rights to file grievances, while Barrett concerns censorship of an inmate's outgoing mail), this similarity is an insufficient basis for applying Barrett as plaintiff wishes.

In sum, the magistrate judge applied the proper standard in making his findings and recommendations regarding plaintiff's retaliation claim.

**II. Appropriateness of denying partial summary judgment to plaintiff**

In deciding plaintiff's motion, the magistrate judge held — correctly, in this court's view – that writing and mailing an article critical of prison staff, which identified certain staff members by their first initials and last names, was protected activity under the First Amendment. (Findings & Recommendations 14.) In other words, the third element above (that plaintiff engaged in protected conduct) was satisfied.

According to the findings and recommendations, plaintiff's motion for partial summary judgment raised three remaining, interrelated questions: whether plaintiff's writing activity was a "substantial" or "motivating" factor behind defendants' conduct (second element); whether defendants' actions in placing plaintiff in administrative segregation (hereinafter, "Ad-Seg"), retaining him in Ad-Seg, and transferring him to a new facility were "adverse," which includes the question of whether the exercise of his First Amendment rights was chilled or silenced (first and third elements); and whether these actions reasonably advanced legitimate correctional goals (fifth element). (Findings and Recommendations 12-15.)

The magistrate judge resolved these questions as follows:

> Defendants contend that they placed plaintiff in Ad-Seg and transferred him because the article posed a threat to the "safety and security" of the institution. In support of their motion, they present evidence that defendants Ferguson and Bradley were both concerned for their safety and the safety of their families after they read the article. See Ferguson Decl. at ¶ 9; Bradley Decl. at ¶¶ 10-11. Both defendant Ferguson and

4

>defendant Bradley averred that contents of the article written about them by plaintiff were false. See Ferguson Decl. at ¶ 7; Bradley Decl. at ¶ 11. In addition, defendant Ferguson averred that "[a]fter reading the article, it was apparent to [Ferguson] that it would be difficult for me and other staff to effectively carry out our duties without being accused of retaliation with each possible contact with Woodard. Woodard's pattern was to label even routine activities of peace officers as retaliation against him for his writings." Ferguson Decl. at ¶ 9. As set forth above, these concerns were communicated to defendants Brown, Arthur, and Haviland. Whether those concerns motivated the actions of defendants Ferguson, Bradley, Brown, Arthur, and/or Haviland, and whether the actions they took served a legitimate correctional goal, are disputed by plaintiff and not susceptible to resolution at summary judgment. (Findings and Recommendations 15.)

The court is skeptical of defendants' position. It is doubtful whether the safety of prison staff would have been reduced in any way if plaintiff had remained in the general population at CSP-Solano, as the article in question was publicly available, regardless of where, and how, plaintiff was incarcerated. It is also doubtful that a fear of "being accused of retaliation with each possible contact with Woodard" justifies removal to Ad-Seg and/or institutional transfer, as inmates have a First Amendment right to file grievances, Brodheim, 584 F.3d at 1269, and California has procedures for addressing inmates' abuse of the grievance system that are far less extreme than administrative segregation or transfer. See, e.g., Cal. Code Regs. tit. 15, § 3084.4 ("Appeal System Abuse").

Nevertheless, defendants cite to the deposition transcript of Associate Warden Brown (a named defendant), who testified that

5

1  he took the measures in question in part because, "I was
2  concerned with [plaintiff's] safety as I wasn't sure if there was
3  another inmate in the institution who may like these individuals
4  [*i.e.*, the prison staff named in plaintiff's article] and may
5  feel it was – take it upon themselves to something to him in
6  their own defense." (Brown Depo. 94:6-10, ECF No. 25-6.) Brown
7  also testified that when he met with CSP-Solano's Institutional
8  Classification Committee, he expressed a belief "that there was a
9  possibility that either the staff, the inmates or Mr. Woodard
10 himself may be – that their security or safety may be compromised
11 based on things that came out of this article." (Brown Depo.
12 140:2-7.) These statements are sufficient to create a triable
13 issue of material fact as to each of the three questions raised
14 by the magistrate judge: specifically, whether plaintiff was sent
15 to Ad-Seg and transferred to another prison for his own safety.
16 At summary judgment, "the judge does not weigh conflicting
17 evidence with respect to a disputed material fact [or] make
18 credibility determinations with respect to statements made in
19 affidavits . . . or depositions. These determinations are within
20 the province of the factfinder at trial . . . . If direct
21 evidence produced by the moving party conflicts with direct
22 evidence produced by the nonmoving party, the judge must assume
23 the truth of the evidence set forth by the nonmoving party with
24 respect to that fact." T.W. Elec. Serv., Inc., 809 F.2d at 630-
25 31.
26     Consequently, as defendants have demonstrated a genuine
27 dispute as to their motivations in placing plaintiff in Ad-Seg
28 and then transferring him to another prison, whether these

actions were adverse, and whether these actions reasonably advanced a legitimate correctional goal, summary judgment in plaintiff's favor was properly denied.

### III. Summary judgment in favor of defendants Brooks, Blackwell, and Rivas

The magistrate judge recommended that summary judgment be entered in favor of defendants Blackwell, Brooks, and Rivas because of an absence of evidence showing that each individual's role in effecting plaintiff's assignment to Ad-Seg and/or transferring him to CCC-Susanville was motivated by plaintiff's protected First Amendment conduct. (Findings and Recommendations 15-16.)

Motivation is an element of a retaliation claim under Section 1983: a plaintiff must show that the adverse action occurred "because of" his protected activity. Rhodes, 408 F.3d at 567–68. According to the Ninth Circuit, "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct. To show the presence of this element on a motion for summary judgment, [plaintiff] need only put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to . . . [defendant's] intent . . . ." Brodheim, 584 F.3d at 1271 (internal quotations and citations omitted).

#### A. Blackwell

Defendant Blackwell, a correctional lieutenant at CSP-Solano, wrote the Form 114-D order placing plaintiff in Ad-Seg.

7

1  It provides:

2
> On July 9, 2009, you, Inmate Woodard, B-88207, are being removed from Facility IV General Population pending investigation into you [sic] publishing information on the internet that identifies CSP-Solano staff members by name. Therefore, you are being removed from Facility IV General Population (GP) and placed in Administrative Segregation (Ad-Seg). (Decl. Haviland, Attachment 2, ECF No. 23-1).

At deposition, Blackwell testified that, on July 9, 2009, he received a phone call from a supervisor who told him to put plaintiff in Ad-Seg. (Blackwell Depo. 29:8-13, ECF No. 25-4.) Blackwell testified that "[i]f a superior tells you to put an inmate in ad seg, you don't question them." (Id. 36:5-6.) He later added, "I would follow the order of the superior because I may not have all the facts." (Id. 37:22-3.) Despite these statements, Blackwell cannot credibly claim that he lacked any authority over whether to order plaintiff to Ad-Seg, as the applicable regulation provides:

> Authority to order an inmate to be placed in administrative segregation, before such action is considered and ordered by a classification hearing, may not be delegated below the staff level of correctional lieutenant except when a lower level staff member is the highest ranking official on duty.
>
> (a) The reason for ordering an inmate's placement in administrative segregation will be clearly documented on a CDC Form 114-D (Order and Hearing on Segregated Housing) by the official ordering the action at the time the action is taken.

Cal. Code Regs. tit. 15, § 3336 (2012). As section 1336 gave

Blackwell the authority to order plaintiff to Ad-Seg, he was not acting in a ministerial capacity when he completed the Form 114-D. In fact, Blackwell conceded that he was "the one with the authority to place [plaintiff] in [Ad-Seg]." (Blackwell Depo. 26:12-13.) Finally, the text of the order makes clear that Blackwell was aware that the Ad-Seg order was due to plaintiff's "publishing information on the internet," *i.e.*, protected activity. When taken in the light most favorable to plaintiff (the non-moving party), these facts, and the cited regulation, are sufficient to create a genuine issue of material fact as to whether the protected First Amendment activity was the substantial or motivating factor for Blackwell to issue the Ad-Seg order.

It is also well-settled that, where inmates engage in activities protected under the First Amendment, "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (quoting Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995)); accord Rhodes, 408 F.3d at 569. In sum, it does not appear that Blackwell can claim qualified immunity for ordering plaintiff to Ad-Seg. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district court [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.")

Accordingly, the court must respectfully disagree with the magistrate judge's finding that "[t]he undisputed evidence shows

that complying with that order, rather than plaintiff's protected First Amendment conduct, was the motivating factor for defendant Blackwell's action." (Findings & Recommendations 16.) Summary judgment in Blackwell's favor is denied.

### B. Rivas

Under Cal.Code Regs., tit. 15, § 3336, after an inmate is initially placed in Ad-Seg, the relevant Form 114-D order is "submitted to the . . . designated staff for review and possible further action as described in section 3337." Section 3337, in turn, provides that "[o]n the first work day following an inmate's placement in administrative segregation, designated staff at not less than the level of correctional captain will review the order portion of the CDC Form 114-D. If retention in administrative segregation is approved at this review, the following determinations will be made . . . ." Cal. Code Regs. tit. 15, § 3337 (2012).

It appears that defendant Rivas, a Correction Counselor II Supervisor at CSP-Solano, was responsible for reviewing plaintiff's placement in Ad-Seg. (Rivas Depo. 14:13-22, ECF No. 33-7.) Under section 1337, Rivas had the authority to decide whether to retain plaintiff in Ad-Seg. This is not a ministerial function.

There is no question that, upon review of the Form 114-D order, Rivas would have become aware of plaintiff's protected activity.[2]

---

[2] Rivas also testified at deposition that he was aware of plaintiff's protected activity, stating, "So we had kind of heard that Boston had used proper names. I don't know if there's any truth or validity. […] I just heard that he used proper names."

Accordingly, there is a genuine issue of material fact as to whether plaintiff's protected First Amendment activity was the substantial or motivating factor for Rivas to retain him in Ad-Seg. Per the Ninth Circuit precedents discussed above, Rivas cannot assert qualified immunity as a defense to liability for this decision. Accordingly, summary judgment in Rivas's favor is denied.

### C. Brooks

Under California law, "[a]ny inmate transfer from a facility other than a reception center shall require a classification committee action and endorsement by a classification staff representative (CSR)." Cal. Code Regs. tit. 15, § 3379 (2012).

Defendant Brooks was the CSR who endorsed plaintiff's transfer from CSP-Solano to CCC-Susanville. (Plaintiff's Response to Defendants' Statement of Undisputed Facts ("PR-DSUF") 1, 7, ECF No. 39.) It is undisputed that Brooks reviewed files to ensure that actions taken by classification committees were in compliance with CDCR policies and regulations, and that she made her decision to endorse plaintiff's transfer based on his file information and the recommendations of the classification committee. (PR-DSUF 5, 9.) The classification committee's recommendation provided: "Based on the nature of the article written and that the fact that it appears to specifically target a staff member at Solano for slander or written retaliation, the recommendation is to transfer [plaintiff] to an alternate facility." (Decl. Haviland, Attachment 3, ECF No. 23-1).

Brooks testified that she could decide not to endorse a

---

(Rivas Depo. 31:21-24.)

transfer if the recommendations were not proper. (Brooks Depo. 12:6-8, 19-23, ECF No. 33-5.) The court concludes that she was not performing a ministerial function.

Accordingly, there is a genuine issue of material fact as to whether plaintiff's protected First Amendment activity was the substantial or motivating factor for Brooks to endorse his transfer to CCC-Susanville. Per the Ninth Circuit precedents discussed above, Brooks cannot assert qualified immunity as a defense to liability for this decision. Accordingly, summary judgment in Brooks's favor is denied.

**IV. Conclusion**

Accordingly, it is hereby ordered that:

    [1] The findings and recommendations filed February 26, 2013, are ADOPTED in part and REJECTED in part, as set forth above;

    [2] Plaintiff's April 27, 2012 motion for partial summary judgment is GRANTED in that it is deemed established that plaintiff's acts of writing the article and mailing it for publication are protected by the First Amendment, and DENIED in all other respects;

    [3] Defendants' July 26, 2012 cross-motion for summary judgment is GRANTED in that judgment is entered for defendant Warden Barnes on plaintiff's due process claim, and DENIED in in all other respects;

[4] Plaintiff is GRANTED leave to amend his complaint to name CDCR Secretary Jeffrey Beard as a defendant; and

[5] This matter is REFERRED back to Magistrate Judge John F. Moulds for further pretrial proceedings.

IT IS SO ORDERED.

DATED: September 18, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

13