UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT "BOSTON" WOODWARD,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN W. HAVILAND, et al.,<br><br>Defendants. | No. 2:11-cv-1807 LKK JFM (PC)<br><br><br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a California state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. On September 17, 2013, plaintiff filed a motion for temporary restraining order ("TRO"). (ECF No. 49.) Plaintiff seeks an order preventing his scheduled transfer from San Quentin State Prison, where he is currently housed, to an out-of state prison in Mississippi, Oklahoma, or Arizona. Id.

BACKGROUND

Plaintiff filed his complaint on July 8, 2011, alleging that defendants engaged in a retaliatory transfer of plaintiff from CSP-Solano to CCC-Susanville in violation of his First Amendment rights. (ECF No. 1.) Both parties filed motions for summary judgment (ECF Nos. 20, 33) and on February 26, 2013, the court issued findings and recommendations regarding those motions (ECF No. 44). On March 22, 2013, plaintiff filed an objection to the proposed findings and recommendations. (ECF No. 47.) On September 19, 2013, the district judge granted the

findings and recommendations in part, and denied them in part.  (ECF No. 51.)  Plaintiff's claims have survived summary judgment and the case is currently ready to be set for trial.

LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER

The purpose in issuing a temporary restraining order is to preserve the status quo of an action pending a fuller hearing.  Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974).  Case law is limited in discussing the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction.  It is apparent, however, that requests for temporary restraining orders which are ex parte but in which notice has been provided, such as in this case,[1] are governed by the same general standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); Jones v. H.S.B.C. (USA), 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  These standards require a party seeking a TRO to show: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "'The burden of persuasion in all of the four requirements is at all times upon the plaintiff.'"  United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting Canal Authority v. Callaway, 489 F.2d 567 (5th Cir. 1974)).  The critical difference between a TRO and a preliminary injunction with respect to these standards is that, for a TRO, a movant must show that he will suffer irreparable harm prior to the time the court can hear and decide a motion for preliminary injunction.  See Fed. Rule Civ. P. 65(b); Mango's Tropical Cafe, Inc. v. Mango

---

[1] On the morning of September 17, 2013, plaintiff's counsel informed California Deputy Attorney General Timothy Delgado, one of defendants' attorneys, of plaintiff's plan to file the motion currently before the undersigned.  Decl. of David B. Newdorf (ECF No. 49-1) at 2.  Additionally, on September 18, 2013, plaintiff's counsel faxed a copy of plaintiff's application for a TRO addressed to the litigation coordinator at San Quentin State Prison.  Decl. of David B. Newdorf (ECF No. 50-1) at 1.

Martini Rest. & Lounge, Inc., 844 F. Supp. 2d 1246, 1251 (S.D. Fla. 2011); Hacker v. Fed. Bureau of Prisons, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006).  In many cases, the emphasis of the court is directed at irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

ANALYSIS

Plaintiff asserts that he will suffer irreparable harm if a TRO does not issue because moving plaintiff from an in-state prison to an out-of-state prison will "delay and frustrate" the current litigation and will make it "costly and inconvenient" for plaintiff and his attorney to prepare for trial in person.  (ECF No. 49 at 1.)  Further, plaintiff argues that a transfer to an out-of-state prison "will hamper the development of his work-related writing skills" because he writes regularly for the *San Quentin News*, the only prison newspaper in California.  (Id. at 2.)  For the reasons discussed below, the court finds plaintiff's motion for a TRO should be denied.

While the court appreciates that plaintiff's impending transfer to another state will likely result in additional costs and inconveniences in litigating this case further; the court also recognizes that such inconveniences do not constitute the sort of "irreparable harm" that is necessary for the granting of a TRO.  United States v. Jefferson Cnty., 720 F.2d 1511, 1520 (11th Cir. 1983) (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.").

The fact that communications between plaintiff and his attorney in preparing his case will be made more "costly and inconvenient" also does not show that plaintiff will suffer a cognizable harm.[2]  Many prisoners with pending civil rights cases must proceed pro se and are required to handle the additional costs and practical inconveniences that are attendant upon being transferred to facilities further away from the courts where their litigation is pending.  The fact that plaintiff

---

[2] The undersigned is mindful that, as a practical matter, allowing the transfer to move forward will make the communications and preparations between plaintiff and his attorney more difficult as this case heads towards a possible trial.  Accordingly, the court will recommend relocating plaintiff back to California an additional two weeks prior to the time he would normally be transported back prior to trial in order to give plaintiff and his counsel time to prepare for trial in person.

has counsel does not mean that he is immune from being transferred to an out-of-state facility and from having to work around these same inconveniences.

Moreover, a convicted prisoner has no liberty interest in choosing which institution, or even which state, in which he is to be held.  Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." );  Meachum v. Fano, 427 U.S. 215 (1976).  Furthermore, an out-of-state transfer will not constitute harm to plaintiff's access to this court in a Constitutional sense; the practical inconveniences brought on by moving an inmate a further distance from the court where his litigation is pending do not interfere with a prisoner's right to meaningful access to the courts. See Ali v. United States, 743 F. Supp. 50, 53 (D.D.C. 1990) (citing Bounds v. Smith, 430 U.S. 817 (1977)) ("[A]lthough the transfer means that the distance now is much greater between the plaintiff and the courts in which he is litigating, the plaintiff has the same constitutional right of meaningful access to courts.").

Finally, the court finds that plaintiff's argument that his "work-related writing skills" will suffer is without merit.  The mere fact that plaintiff will be housed further away from "the only prison newspaper in California" does not mean that plaintiff will not have other opportunities available to him to work on his writing skills or that he will be deprived of his ability to send his writings for publication in the *San Quentin News* and other publications.  Similarly, this possible diminishment in skills does not constitute the sort of "irreparable harm" that a TRO is designed to protect against.

For the reasons discussed above, the undersigned finds that plaintiff has failed to meet his burden in showing that he will suffer irreparable harm if the requested TRO were not to issue.[3]

---

[3] Because the court finds that plaintiff fails to establish the requisite irreparable harm the court need not and will not address whether the remaining three factors have been met by plaintiff. However, the court notes that, with regard to the public interest, the State does have an interest in moving plaintiff out of state as part of its efforts to respond to its unconstitutionally overcrowded prisons.  This interest tips against plaintiff in a balance of the hardships. See Olim, 461 U.S. at 245-46 ("Overcrowding and the need to separate particular prisoners may necessitate interstate transfers. For any number of reasons, a State may lack prison facilities capable of providing appropriate correctional programs for all offenders.").

CONCLUSION

Based on the foregoing, the undersigned finds that plaintiff has failed to establish that he will suffer irreparable harm if a TRO is not issued. Because plaintiff has failed to make this required showing, the undersigned finds it unnecessary to address whether plaintiff has met his burden with respect to the other elements necessary for a TRO to issue. Accordingly, for the reasons set forth above, the undersigned recommends that plaintiff's ex parte application for a temporary restraining order be denied.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's September 17, 2013 motion for a temporary restraining order (ECF No. 49) be denied.
2. Plaintiff be relocated back to California an additional two weeks prior to the time he would normally be transported back prior to trial in order to give plaintiff and his counsel time to prepare for trial in person.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 19, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

wood1807.tro