UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BOSTON WOODARD,<br><br>Plaintiff,<br><br>v.<br><br>JOHN W. HAVILAND, et al.,<br><br>Defendants. | No.  2:11-cv-01807 LKK KJN P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Defendants' motion to dismiss (ECF No. 63) came on regularly for hearing on February 27, 2014.  ECF No. 67.  David Newdorf appeared on behalf of plaintiff, and Tim Delgado appeared on behalf of defendants.  After considering the supporting documentation and oral arguments, and for the reasons discussed at the hearing, the court recommends that defendants' motion to dismiss be granted in part and denied in part.

I.   Background

Plaintiff filed his original complaint on July 8, 2011, against Captain Arthur, Ron Barnes, R. Blackwell, M. Bradley, E. Brooks, C.D. Brown, California Department of Corrections and Rehabilitation ("CDCR"), Clayborne Ferguson, R. L. Fleshman, John W. Haviland, and R. Rivas. ECF No. 1.  Therein, plaintiff alleged as follows.  While housed at CSP-Solano, plaintiff received in the mail copies of an article he wrote which were rejected by the mailroom staff.  Complaint, ECF No. 1, ¶ 27.  Plaintiff filed grievances regarding the rejection which were ultimately granted.

1  Id.  Plaintiff was later accused of being "uncooperative" during an interview by defendant
2  Bradley, supervisor of the CSP-Solano mailroom staff, regarding a separate grievance filed by
3  plaintiff.  Id. ¶ 28.  Plaintiff was also harassed by defendants at CSP-Solano after an article he
4  wrote was published discussing prison staff's involvement in smuggling contraband into the
5  prison; plaintiff filed a grievance in response to this harassment.  Id. ¶¶ 29-30.  Following the
6  filing of another separate grievance by plaintiff, he heard an officer say to another officer that
7  plaintiff would not be at the prison "much longer."  Id. ¶ 31.  Plaintiff filed a grievance in
8  response to this statement and was confronted by the subject of the grievance.  Id. ¶ 32.  "Rather
9  than properly investigating and responding to [plaintiff's] complaints of harassment and
10 retaliation, prison officials used the grievance process to falsely portray [him] as 'loud' and
11 'uncooperative' in order to discredit his complaints."  Id. ¶ 33.
12         In April 2009 plaintiff wrote an article entitled "Rogue Prison Staff: Breaking All The
13 Rules," which outlined the alleged harassment and retaliation plaintiff was subjected to at CSP-
14 Solano.  Id. ¶ 34.  The article identified several prison staff members by first initial and last name,
15 including defendants Ferguson and Bradley.  Id. ¶ 34.  Following publication of this article, on
16 July 9, 2009, plaintiff was placed in administrative segregation at CSP-Solano.  Id. ¶ 36.  Plaintiff
17 was advised that he was being placed in administrative segregation "'pending investigation into
18 you publishing information on the internet that identifies CSP-Solano staff members by name . . .
19 Based on this information, you are deemed a threat to the Level II General Population and the
20 safety and security of this institution.'"  Id. ¶ 36.  Plaintiff was separated from his "writing
21 materials, typewriter and legal papers."  Id. ¶ 38.  On July 16, 2009, plaintiff was told that he was
22 "being transferred to another prison because of [his] continued journalistic activities."  Id. ¶ 41.
23 The premise of the transfer was that CSP-Solano prison staff were concerned for their safety.  Id.
24 On August 6, 2009, plaintiff was transferred to CCC-Susanville, despite his counsel's efforts to
25 enjoin the transfer through a temporary restraining order.  Id. ¶¶ 45-53.  When plaintiff's property
26 arrived at CCC-Susanville, seven days after his transfer, he was "told by prison officials that he
27 could not keep his typewriter, even though it had been permitted at CSP-Solano."  Id. ¶ 54.
28 ////

Following his arrival at CCC-Susanville, plaintiff was "the victim of additional violations of his mail privileges and First Amendment rights." Id. ¶ 58. Plaintiff's mail was "intercepted and rejected" on two separate occasions by defendant Fleshman, and "Warden Barnes was deliberately indifferent to the need to train and supervise CCC-Susanville mail room staff regarding the First Amendment rights of prisoners" which resulted in "the violation of plaintiff's rights caused by improper rejection of plaintiff's incoming mail." Id. ¶¶ 58-59.

Plaintiff's first claim for relief alleged that he has a First Amendment right to, among other things, "write articles about prison life" and "receive written material." Id. ¶¶ 63-64. Plaintiff alleged that he was retaliated against by defendants at CSP-Solano for writing articles critical of prison officials in violation of the First Amendment. Id. ¶¶ 66-69. As a result of defendants' retaliatory conduct, plaintiff was placed in administrative segregation and transferred to another prison. Id. ¶ 68. One of the consequences of the alleged retaliatory transfer is that plaintiff "has been without a typewriter." Id. ¶ 71.

Plaintiff's second claim for relief alleged that he "has a right under the Fourteenth Amendment to possess personal property and items" and "a right under the First Amendment to receive written material." Id. ¶¶ 77-78. Plaintiff alleged that his "right to possess property was violated by officials at CCC-Susanville" who, "under the control and supervision of Warden Ron Barnes[,] . . . denied [plaintiff] the right to possess his personal typewriter." Id. ¶ 79. In that regard, plaintiff alleged as follows:

> On information and belief, in denying Woodard his typewriter, these officials purported to act under an official policy, practice or procedure of the CDCR. The policy, practice or procedure of CDCR under which Woodard was denied his typewriter violated the Fourteenth Amendment because it was arbitrary and capricious and did not reasonably advance any legitimate penological interests. Moreover, as applied to Woodard, this official policy, practice or procedure violated his First Amendment rights because (a) Woodard was deprived of his property as a result a [sic] retaliatory transfer; and (b) the deprivation of Woodard's typewriter was arbitrary, capricious, and did not reasonably advance any legitimate penological interests and chilled his exercise of First Amendment rights.

Id. ¶ 80. Plaintiff also alleged that defendant Fleshman violated his "right to receive incoming mail." Id. ¶¶ 82-83.

3

The complaint prayed for, among other things, injunctive relief as follows:

    a. Allowing Woodard to possess his personal typewriter;

    b. Requiring Woodard to be returned to CSP-Solano or another suitable alternative facility;

    c. Enjoining enforcement of unconstitutional CDCR policies concerning screening inmate incoming mail and inmate personal property; [and]

    d. Enjoining future ad seg detention, transfer or other adverse actions against Woodard in retaliation for his writing or filing of grievances or lawsuits.

Id. at 18-19.

Defendants answered on October 7, 2011 (ECF No. 18), and the court issued a discovery and scheduling order on November 9, 2011 (ECF No. 19). Following discovery, the parties filed cross-motions for summary judgment on April 27, 2012 (ECF No. 20) and July 26, 2012 (ECF No. 33). A hearing on the summary judgment motions was held on September 20, 2012. ECF Nos. 40, 42.

On February 26, 2013, the magistrate judge assigned to this action at that time issued findings and recommendations addressing plaintiff's motion for partial summary judgment and defendants' motion for summary judgment. ECF No. 44. Relevant to the motion at bar, the findings and recommendations' factual summary found that "[o]n plaintiff's arrival at CCC-Susanville, plaintiff's typewriter was confiscated because it had memory capabilities, which was not permissible per the CCC Department Operations Manual Supplement." Id. at 7, 16 (citations omitted). With regard to plaintiff's allegations that defendant Barnes violated plaintiff's due process rights when staff members at CCC-Susanville confiscated his typewriter, the court quotes the magistrate judge's findings and recommendation:

> The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209 (2005). In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence. Sandin v. Conner, 515 U.S. 472, 480 (1995). However, a state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84.

> A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484).
>
> Prison restrictions on personal property that an inmate may possess do not violate the Due Process Clause. See, e.g., Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999) (dismissing due process challenge to new prison policy limiting amount of property a prisoner could keep in his cell); Blackwell v. Pizzola, 2010 WL 4505813, *6 (E.D. Cal. Nov. 12, 2010) (dismissing due process challenge to confiscation of prisoner's JWIN radio as not imposing atypical or signification hardship in relation to the ordinary incidents of prison life); Vogelsang v. Tilton, 2008 WL 4891213, *4, (E.D. Cal. Nov. 12, 2008) (dismissing due process claim because restrictions on number of appliances inmate is allowed to possess did not impose atypical or significant hardship in relation to the ordinary incidents of prison life); Martin v. Hurtado, 2008 WL 4145683, *13 (S.D. Cal. Sept. 3, 2008) (dismissing due process challenge because "deprivation of [inmates'] television does not pose an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life' ").
>
> On the record here, there is no evidence upon which the court could conclude that the confiscation of plaintiff's typewriter is an "atypical and significant hardship" when compared to "the ordinary incidents of prison life." Sandin, supra. While the court acknowledges the hardship that the confiscation caused plaintiff in light of his medical problems, plaintiff does not allege that he is prohibited from possessing a typewriter without memory capabilities, that his typewriter was confiscated by defendants at CCC-Susanville in retaliation for plaintiff's exercise of his First Amendment rights (indeed, that they were even aware of the reason for plaintiff's transfer), or that the confiscation was arbitrary or capricious. Plaintiff did not oppose defendants' motion for summary judgment as to this claim. Therefore, summary judgment should be entered for Warden Barnes on plaintiff's due process claim.

Id. at 16-18. The court also found that "[p]laintiff does not claim these [CCC-Susanville] defendants retaliated against him in violation of his First Amendment rights. Instead, plaintiff claims that Sgt. Fleshman, in his individual capacity, and Warden Barnes, in his supervisory capacity, violated plaintiff's right to receive incoming mail." Id. at 18.

Also relevant to the motion at bar are the court's findings regarding plaintiff's claims against the CDCR. In that regard, defendants sought dismissal of the CDCR on grounds of Eleventh Amendment immunity. The CDCR was named solely for injunctive relief so as to prevent future retaliatory transfers of plaintiff. Id. at 20. The court found that "plaintiff's claim

5

for injunctive relief is subject to dismissal because he has not sued the head of the CDCR in his official capacity, which is required to qualify for" the exception to Eleventh Amendment immunity for suits seeking prospective injunctive relief.  Id.  The court recommended granting plaintiff leave to amend his complaint to name CDCR Secretary Jeffrey Beard as a defendant.  Id.

The assigned district judge adopted the findings and recommendations in part.  Relevant to the motion at bar, the district judge granted defendants' cross-motion for summary judgment in that judgment was entered for defendant Warden Barnes on plaintiff's due process claim.  ECF No. 51 at 12.  Plaintiff was granted leave to amend his complaint to name CDCR Secretary Jeffrey Beard as a defendant.  Id. at 13.  Finally, the assigned district judge found a genuine issue of material fact as to plaintiff's First Amendment retaliatory transfer claim.

On November 27, 2013, plaintiff filed an amended complaint naming John W. Haviland, C.D. Brown, R. Blackwell, Captain Arthur, R. Rivas, Clayborne Ferguson, M. Bradley, E. Brooks, R.L. Fleshman, and Jeffrey A. Beard, individually and in his official capacity as Secretary of California Department of Corrections and Rehabilitation, as defendants.  First Amended Complaint, ECF No. 57 ("FAC").  Therein, plaintiff sets forth the same allegations and claims as stated in his original complaint with the exception of the following: (1) Warden Barnes and the CDCR were removed as defendants; (2) Secretary Jeffrey Beard was named, in his individual and official capacity, in place of the CDCR; and (3) plaintiff's request for injunctive relief involving his return to CSP-Solano was removed.[1]  Id.  As a result of the court's ruling on the parties' summary judgment motions, plaintiff's Fourteenth Amendment Due Process claim regarding the confiscation of his typewriter by CCC-Susanville prison staff is no longer before the court; and plaintiff's First Amendment claims involving his alleged retaliatory transfer and the improper interception and rejection of his incoming mail remain before the court.  See FAC ¶¶ 60-73, 74-85.

////

---

[1] Plaintiff has since been transferred from CCC-Susanville to San Quentin State Prison, and is presently awaiting transfer to an out-of-state prison.  See Mot. to Dismiss at 3 (citing ECF No. 50).

1 On December 27, 2013, defendants filed a motion to dismiss, arguing that plaintiff's amended complaint as to his prayer for prospective injunctive relief should be dismissed for the following reasons: (1) defendant Beard cannot be held liable in his individual capacity because he was not personally responsible for any of the claimed constitutional violations;" (2) "the amended complaint cannot support a claim for injunctive relief against Secretary Beard in his official capacity" because plaintiff's proposed injunction "would essentially require Secretary Beard and CDCR's correctional professionals to obey the law in the future;" and (3) "insofar as the amended complaint is seeking injunctive relief from the nine remaining defendants, these claims are moot" because plaintiff has "been transferred from the two institutions where the events at issue took place." Mem. of P. & A. in Supp. of Mot. to Dismiss, ECF No. 63-1 ("Mot. to Dismiss"), at 2.

II. Applicable Legal Standards

A. Legal Standards Applicable to a Rule 12(b)(6) Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" Erickson, 551 U.S. 89, 127 S. Ct. at 2200 (quoting Bell Atlantic at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

Moreover, "[n]otice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories." Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). "'This simplified notice pleading standard relies on

7

liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" Alvarez, 518 F.3d at 1157 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)).  "A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." Id.

      B.      Legal Standards Applicable to Actions Seeking Injunctive Relief

The United States Supreme Court has identified the requirements for the granting of permanent injunctive relief as follows:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see also Weinberger v. Romero–Barcelo, 456 U.S. 305, 312 (1982) (In exercising their sound discretion, courts should pay particular regard to public consequences in granting an injunction.); American–Arab Anti–Discrimination Committee v. Reno, 70 F.3d 1045, 1066-67 (9th Cir. 1995) ("The requirements for the issuance of a permanent injunction are the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law.")  In addition, in seeking prospective injunctive relief, plaintiff must allege facts that if proven would establish that he is likely to suffer future injury if defendant is not so enjoined.  See Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1042 (9th Cir. 1999).  Thus, as the Ninth Circuit has observed:

> In a suit for prospective injunctive relief, a plaintiff is required to demonstrate a real and immediate threat of future injury. City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that the threat must be " 'real and immediate' " as opposed to " 'conjectural' or 'hypothetical' "). The key issue is whether the plaintiff is "likely to suffer future injury." Id. at 105, 461 U.S. 95, 103 S. Ct. 1660, 75 L.Ed.2d 675; see also O'Shea v. Littleton, 414 U.S. 488, 496, 498, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974).

Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006).

////

Of course, "the court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative." Stevens v. Harper, 213 F.R.D. 358, 370 (E.D. Cal. 2002); see also Lyons, 461 U.S. at 105-08 & n.7 (a plaintiff is required to credibly allege that he faces a realistic threat of future harm from the practice he seeks to enjoin); Goldie's Bookstore v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury.").

The standards for permanent injunction and preliminary injunction are essentially the same with the exception that in order for a permanent injunction to issue, plaintiff must ultimately show actual success on the merits, instead of probable success on the merits. Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987); see also Walsh v. City and County of Honolulu, 460 F.Supp.2d 1207, 1211 (D. Hawaii 2006).

III.   Discussion

In his amended complaint, plaintiff seeks an order granting injunctive relief as follows:

> a. Allowing Woodard to possess his personal typewriter [with memory capabilities];
>
> b. Enjoining enforcement of unconstitutional CDCR policies concerning screening inmate incoming mail and inmate personal property; [and]
>
> c. Enjoining future ad seg detention, transfer or other adverse actions against Woodard in retaliation for his writing or filing of grievances or lawsuits.

ECF No. 57 at 18. As noted above, defendants move the court to dismiss plaintiff's claims for injunctive relief on the grounds that (1) defendant Beard cannot be held liable in his individual capacity; (2) plaintiff's proposed injunctive relief against defendant Beard in his official capacity would require him and CDCR employees to "obey the law in the future;" and (3) claims for injunctive relief against the nine remaining defendants are moot. Mot. to Dismiss at 2.

In his opposition, plaintiff concedes that defendant Beard should not be included in the amended complaint in his individual capacity. Opposition at 4. The court will therefore recommend granting defendants' motion to dismiss the prayer for injunctive relief against

////

defendant Beard in his individual capacity.[2]  With regard to defendants' motion to dismiss plaintiff's prayer for prospective injunctive relief against defendant Beard in his official capacity, plaintiff argues that the prayer for relief is adequate and complies with the Federal Rules of Civil Procedure.  Id. at 4-6.  Plaintiff does not explicitly address defendants' argument regarding injunctive relief against the nine remaining defendants in his opposition.  However, during the hearing, plaintiff's counsel clarified that he opposes the motion with regard to the remaining defendants.

For the reasons discussed below, the court will recommend granting the motion to dismiss in part, and denying the motion to dismiss in part.

A. Prayer for Injunctive Relief Against Defendant Beard in his Official Capacity

Here, defendants' argument is twofold.  First, defendants take issue with whether the amended complaint can state a prayer for injunctive relief involving the possession of plaintiff's typewriter in light of the court's findings regarding the parties' cross-motions for summary judgment.  Second, defendants argue that the remaining prayer for injunctive relief cannot survive because it requires defendant Beard to "obey the law in the future."  Mot. to Dismiss at 2, 7-9. Each argument will be addressed in turn.

1. Prayer for Relief Involving Plaintiff's Typewriter

With regard to injunctive relief involving plaintiff's typewriter with memory capabilities, defendants argue that "the Court has already considered – and rejected – Plaintiff's claims concerning keeping his typewriter in his cell."  Mot. to Dismiss at 6.  Plaintiff counters that "the First Amended Complaint retained allegations that confiscation of Woodard's typewriter violated the First Amendment."  Opposition at 7.  The claim plaintiff refers to in his opposition, as stated in both his original and amended complaint, alleges:

> On information and belief, in denying Woodard his typewriter, these [CCC-Susanville] officials purported to act under an official policy, practice or procedure of the CDCR. . . . [A]s applied to Woodard, this official policy, practice or procedure violated his First Amendment rights because (a) Woodard was deprived of his property as a result a [sic] retaliatory transfer; and (b) the

---

[2] Defendants' December 27, 2013 request for judicial notice of defendant Beard's official biography (ECF No. 64) will therefore be denied as unnecessary.

10

> deprivation of Woodard's typewriter was arbitrary, capricious, and did not reasonably advance any legitimate penological interests and chilled his exercise of First Amendment rights.

FAC ¶ 78. Plaintiff also contends that "if Woodard succeeds on his claim that he lost his typewriter as a result of a retaliatory transfer in violation of the First Amendment, the Court in its discretion could enter an order for the return of his typewriter, even if the confiscation of the typewriter at CCC-Susanville did not constitute an independent Constitutional violation." Opposition at 7.

During the hearing, the parties presented arguments addressing whether injunctive relief directing defendant Beard to permit plaintiff possession of his typewriter with memory capabilities in his cell is proper. In that regard, plaintiff reiterated his argument that the amended complaint states a First Amendment challenge to the CDCR regulation that prohibits typewriters with memory capabilities in prisoner's cells. Plaintiff argued that defendants did not move for summary judgment on either plaintiff's First or Fourteenth Amendment claims involving the confiscation of his typewriter; rather, the court conducted a due process analysis and found sua sponte that the deprivation of plaintiff's typewriter did not constitute a due process violation. Plaintiff concluded that, while he had an option to go forward with a First Amendment claim against defendant Barnes, he chose to dismiss all claims against him. Defendants countered that they did move for summary judgment with regard to the claims against defendant Barnes.[3] Defendants argued that the findings and recommendations addressed plaintiff's First and Fourteenth Amendment allegations against CCC-Susanville staff involving the confiscation of his typewriter and specifically found no First Amendment claim therein. Therefore, defendants argued, the findings refute plaintiff's argument that the claim was retained.

After considering the parties' arguments and carefully reviewing the record, and for the reasons discussed below, the court recommends granting defendants' motion to dismiss plaintiff's

---

[3] Defendants' summary judgment motion as to defendant Barnes states as follows: "Warden Barnes was the warden at CCC[-Susanville] during the times relevant to the complaint. However, he was not involved in the transfer and was not involved in any of the conduct Woodard alleges as being retaliatory. . . . Therefore, he is entitled to summary judgment. Warden Barnes did not confiscate Woodard's typewriter or deny Woodard any right or privilege. . . . He cannot have retaliated against Woodard." ECF No. 33 at 17.

11

1  prayer for injunctive relief involving his typewriter.

2  With regard to plaintiff's argument that his amended complaint retained allegations of a
3  First Amendment violation regarding the prison's regulation and the confiscation of his
4  typewriter, the court finds this argument fails. The magistrate judge's February 26, 2013 findings
5  and recommendations found that "[w]hile the court acknowledges the hardship that the
6  confiscation caused plaintiff in light of his medical problems, *plaintiff does not allege . . . that his*
7  *typewriter was confiscated by defendants at CCC-Susanville in retaliation for plaintiff's exercise*
8  *of his First Amendment rights (indeed, that they were even aware of the reason for plaintiff's*
9  *transfer).*" ECF No. 44 at 17 (emphasis added). The court also found that, with regard to the
10 alleged rejection of plaintiff's incoming mail at CCC-Susanville, "[p]laintiff does not claim these
11 [CCC-Susanville] defendants retaliated against him in violation of his First Amendment rights"
12 but rather that they violated his right to receive incoming mail. Id. at 18. Other than his
13 conclusory arguments in his opposition and during the hearing, plaintiff presented nothing to
14 justify a finding contrary to the court's prior findings and recommendations. While plaintiff
15 argued during the hearing that the court only made these particular findings sua sponte and not in
16 response to any briefing by the parties, this argument fails to recognize the implication of a sua
17 sponte finding regarding a claim for relief.

18 Section 1915 provides that a court may sua sponte dismiss a claim for failure to state a
19 claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); see Omar v. Sea–Land
20 Service, Inc., 813 F.2d 986, 991 (9th Cir. 1987) (("A trial court may dismiss a claim sua sponte
21 under Fed. R. Civ. P. 12(b)(6) . . . *Such a dismissal may be made without notice* where the
22 claimant cannot possibly win relief.") (citations omitted and emphasis added); Accord Gamez v.
23 Berkler, Civil No. 1:08-cv-01113 MJL (PCL), 2011 WL 3875476, at *3-4 (E.D. Cal. Sept. 1,
24 2011) aff'd in part, vacated in part on other grounds sub nom. Gamez v. Gonzales, 481 F. App'x
25 310 (9th Cir. 2012) (district court sua sponte dismissed plaintiff's Fourteenth Amendment Equal
26 Protection claim at summary judgment stage); Bridges v. Hubbard, No. CIV S-09-0940 TLN
27 DAD P, 2013 WL 3773886, at *11-12 (E.D. Cal. July 17, 2013) report and recommendation
28 adopted, No. CIV S-09-0940 TLN DAD P, 2013 WL 5230239 (E.D. Cal. Sept. 16, 2013) (same);

1  Davis v. Flores, Civil No. 1:08cv01197-JTM(JMA), 2010 WL 2673458, at *12-13 (E.D. Cal. July

2  2, 2010) aff'd, 484 F. App'x 108 (9th Cir. 2012) (same).

3        Here, the magistrate judge reviewed the record and explicitly found sua sponte that

4  plaintiff did not allege that his typewriter was confiscated in retaliation for his exercise of his

5  First Amendment rights. Plaintiff did not file objections to this portion of the findings and

6  recommendations; and they were adopted by the assigned district judge. ECF No. 47 at 24

7  (plaintiff's objections merely refer to a First Amendment claim regarding the CDCR policy, and

8  fail to set forth any argument regarding the court's findings as to this First Amendment claim);

9  see Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991) (failure to object to the magistrate's

10 findings may constitute waiver of that issue). In light of the court's findings and

11 recommendations, the undersigned finds it impossible that plaintiff has "retained" a First

12 Amendment claim for the confiscation of his typewriter with memory capabilities.[4] Without a

---

[4] A review of plaintiff's amended complaint leads to the same conclusion by this court. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff's evidence must establish a link between the challenged conduct and the state actor's allegedly retaliatory motive. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

With regard to the first element, the remaining defendant who worked at CCC-Susanville is defendant Fleshman, a mailroom employee. Plaintiff's allegations against defendant Fleshman involve his alleged improper interception of plaintiff's mail, not the confiscation of his typewriter with memory capabilities. FAC ¶ 58. Thus, the amended complaint contains no allegations that a state actor at CCC-Susanville took some adverse action against plaintiff involving his typewriter.

With regard to the second and third elements, the amended complaint contains no allegations that plaintiff's typewriter with memory capabilities was confiscated by CCC-Susanville prison staff because of his alleged protected conduct at CSP-Solano. In fact, as the court's prior findings and recommendations point out, the amended complaint does not allege that CCC-Susanville prison staff were even aware of the alleged retaliatory motive for plaintiff's transfer from CSP-Solano.

Similarly, the amended complaint fails to allege a causal connection between the policy at issue and the action that purportedly provoked the retaliation. The amended complaint does not contain any allegations that the policy was enacted or imposed upon plaintiff with unconstitutional motive in retaliation for his alleged protected conduct. Indeed, the amended complaint is devoid of any allegations that plaintiff engaged in protected activity, such as filing grievances or lawsuits or writing articles about prison life, while housed at CCC-Susanville.

Even construing plaintiff's amended complaint liberally, it fails to allege facts susceptible to an inference that state actors at CCC-Susanville imposed the policy upon plaintiff with an unconstitutional motive in retaliation for his protected conduct. For these reasons, the

13

challenge to the CDCR's regulation prohibiting typewriters with memory capabilities in prisoner's cells, injunctive relief involving plaintiff's typewriter is not warranted.

With regard to plaintiff's argument that the court could enter an order for the return of his typewriter even if the confiscation did not constitute an independent constitutional violation, this argument also fails. Opposition at 7. Here, while plaintiff has not alleged a separate First Amendment claim based on the confiscation of his typewriter, the amended complaint does allege that the confiscation of his typewriter was a consequence of his alleged retaliatory transfer. See, e.g., FAC ¶ 2. Plaintiff's First Amendment retaliatory transfer claim has not been dismissed, and the court takes no position on this claim at this juncture. Accordingly, if plaintiff succeeds on this claim and proves that his transfer from CSP-Solano to CCC-Susanville was in fact retaliatory, he may be able to make an argument that he should be made whole. Plaintiff asserts that such an argument may therefore include consideration of his allegation that his typewriter with memory capabilities was confiscated as a result of his retaliatory transfer.

Here, the prospective injunctive relief plaintiff seeks would require defendant Beard to permit him possession of a typewriter with memory capabilities in his cell. Such an order by the court would violate CDCR's policy of prohibiting inmates to keep such typewriters in their cells - a policy the court has already found does not violate plaintiff's Due Process rights. ECF No. 44 at 16-18. The court finds that, even if plaintiff prevails on his First Amendment retaliatory transfer claim, a permanent injunction that violates an existing CDCR policy is highly improbable. Accordingly, plaintiff's claim for injunctive relief permitting possession of his typewriter with memory capabilities in his cell should be dismissed.

For these reasons, the court recommends granting defendants' motion to dismiss plaintiff's injunctive relief involving his typewriter against defendant Beard in his official capacity.

        2.      <u>Remaining Prayer for Injunctive Relief Against Defendant Beard</u>

The remaining prayer for injunctive relief seeks a court order "[e]njoining enforcement of

---

undersigned also finds that plaintiff's amended complaint does not state a First Amendment claim regarding the regulation that bars typewriters with memory capabilities in prisoner's cells.

unconstitutional CDCR policies concerning screening inmate incoming mail and inmate personal property; [and] . . . [e]njoining future ad seg detention, transfer or other adverse actions against Woodard in retaliation for his writing or filing of grievances or lawsuits." FAC at 18.

Defendants argue that "Plaintiff's requested injunctive relief is unworkable and incurably imprecise" because it does not say which "polices are unconstitutional, or how." Mot. to Dismiss at 7 (emphasis omitted). Plaintiff counters that "[i]t is premature for the Court to consider the merits or scope of any potential permanent injunction." Opposition at 4.

Here, with regard to the four-factor test set forth in eBay Inc., plaintiff has alleged facts establishing that he may suffer irreparable harm if the prospective injunctive relief is not granted. The allegations in plaintiff's amended complaint indicate that he has been transferred in retaliation for articles he wrote or grievances and lawsuits he filed, and that his mail has been improperly intercepted on more than one occasion. Because plaintiff remains incarcerated with the CDCR, he continues to be susceptible to alleged violations of his First Amendment rights. See Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 564 (9th Cir. 1990) ("Permanent injunctive relief is warranted where, as here, defendant's past and present misconduct indicates a strong likelihood of future violations.") (citing Green v. McCall, 822 F.2d 284, 293 (2nd Cir. 1987)). With regard to the remaining eBay, Inc. factors, damages might be an inadequate remedy because they would not ensure that similar constitutional violations would not be committed in the future. The balance of hardships weighs in favor of plaintiff as he may continue to suffer the harm alleged in his amended complaint such as improper interception of his incoming mail. Finally, the public interest would not be disserved by a permanent injunction because the public has an interest in ensuring prisoners' rights are not violated which leads to the additional cost of civil proceedings.

However, as the court made clear during the hearing, notwithstanding the court's findings herein, the likelihood of a court granting the injunctive relief which plaintiff seeks is extremely remote. Nevertheless, it does not further judicial efficiency to strike the relief sought at this juncture and essentially eliminate a potential remedy for the trial judge if plaintiff prevails. See, e.g., Howard v. City of Vallejo, No. CIV. S-13-1439-LKK-KJN, 2013 WL 6070494, *6-7 (E.D.

1 Cal. Nov. 13, 2013) ("plaintiffs' claim for injunctive relief must be resolved on an evidentiary

2 record and not at the pleading stage") (citing Lyons, 461 U.S. 95; Hodgers-Durgin, 199 F.3d at

3 1040-41; and LaDuke v. Nelson, 762 F.2d 1318 (9th Cir. 1985)).

4 For these reasons, the court will recommend denying defendants' motion to dismiss the

5 remainder of plaintiff's prayer for injunctive relief as to defendant Beard in his official capacity.

6       B.      Prayer for Injunctive Relief Against Remaining Nine Defendants

7 Defendants argue that plaintiff's pray for injunctive relief against the remaining nine

8 defendants should be dismissed as moot because plaintiff is no longer housed at CSP-Solano or

9 CCC-Susanville. Mot. to Dismiss at 3. Plaintiff did not explicitly address this claim in his

10 opposition. Plaintiff merely states that, "[a]s stated in the First Amended Complaint, plaintiff

11 only requests – and Plaintiff only intends to seek – final injunctive relief against Secretary

12 Beard." Opposition at 4 (citing FAC ¶¶ 19, 67, 75). Plaintiff also makes a conclusory statement

13 that the prayer for prospective injunctive relief is not moot. Id. During the hearing, plaintiff's

14 counsel clarified that he does oppose the motion to dismiss the claim for injunctive relief against

15 the remaining nine defendants. In that regard, plaintiff argued that the court would have to find as

16 a matter of law that there is no basis for injunctive relief against the nine remaining defendants.

17 Plaintiff pointed to allegations in his amended complaint involving the loss of his property, which

18 includes a 300-page manuscript, during his transfer from CSP-Solano to CCC-Susanville, arguing

19 that injunctive relief would be proper if it were discovered at trial that any of the nine remaining

20 defendants are in possession of this property. See FAC ¶ 2.

21 While plaintiff clarified at the hearing that he opposes defendants' motion to dismiss this

22 claim, his failure to oppose the motion in his February 13, 2014 opposition warrants dismissal.

23 Tatum v. Schwartz, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5,

24 2007) (holding that the plaintiff "tacitly concede[d]" that her claim should be dismissed by failing

25 to address defendants' argument in her opposition, and granting defendants' motion to dismiss

26 with respect to that claim); Silva v. U.S. Bancorp, No. 5:10-cv-01854-JHN-PJWx, 2011 WL

27 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim

28 should be dismissed by failing to address Defendants' arguments in his Opposition."); Hopkins v.

16

Women's Div., Gen. Bd. of Global Ministries, 238 F.Supp.2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Notwithstanding plaintiff's failure to oppose defendants' motion to dismiss this claim, the court finds that defendants' motion also succeeds on the merits.

A prisoner's transfer away from the institution at which the challenged conduct is occurring will generally moot any claims for injunctive relief relating to the prison's policies, unless the suit is certified as a class action. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); see also Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). The claim is not moot, however, if there is a likelihood of recurrence. Demery v. Arpaio, 378 F.3d 1020, 1026 (9th Cir. 2004) (quotation marks omitted). The capable-of-repetition-yet-evading-review exception to the mootness doctrine applies when (1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a reasonable expectation that the same party will be subjected to the same offending conduct. Demery, 378 F.3d at 1026; see also Turner v. Rogers, 131 S. Ct. 2507, 2514-15 (2011); Alvarez v. Smith, 558 U.S. 87, 93 (2009).

Here, plaintiff has made no showing that the duration of this action is too short to be litigated prior to cessation of the alleged conduct. Demery, 378 F.3d at 1027. Similarly, plaintiff has not established a demonstrated probability or a reasonable expectation that he will be transferred back to CSP-Solano or CCC-Susanville. Id.; see also Rhodes, 408 F.3d at 565-66 n.8.

Finally, with regard to plaintiff's argument that one of the nine remaining defendants may potentially be in possession of plaintiff's manuscript that was lost during his transfer from CSP-Solano to CCC-Susanville, the court finds this argument far too speculative to warrant retaining injunctive relief against these defendants.

For these reasons, the court recommends that defendants' motion to dismiss plaintiff's prayer for injunctive relief as to the nine remaining defendants be granted.

////

////

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that defendants' December 27, 2013 request for judicial notice (ECF No. 64) is denied as unnecessary.

Furthermore, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 37) be granted in part and denied in part as follows:

1. Granted as to injunctive relief against defendant Beard in his individual capacity;
2. Granted as to injunctive relief involving the return of plaintiff's typewriter against defendant Beard in his official capacity;
3. Denied as to injunctive relief enjoining enforcement of alleged unconstitutional CDCR policies and future ad seg detention, transfer or other retaliatory actions against Beard in his official capacity; and
4. Granted as to injunctive relief against the remaining nine defendants other than defendant Beard.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 10, 2014

wood1807.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE